23 N.J. Super. 372 (1952)
93 A.2d 49
IN THE MATTER OF THE ACCOUNT OF IRA A. KIP II AND ROBERT S. KEARNEY AS SUCCESSOR TRUSTEES UNDER A CERTAIN INDENTURE OF TRUST MADE BY KATHARINE FLOWER KIP (SUBSEQUENTLY KATHARINE FLOWER RUNYON), DATED DECEMBER 23, 1911.
Superior Court of New Jersey, Chancery Division.
Decided December 1, 1952.
*373 Mr. George G. Tennant, Jr., attorney for plaintiffs.
Mr. O. Blake Willcox, attorney for Ira Andrus Kip III.
COLIE, J.S.C.
The complaint seeks instructions in three respects hereinafter enumerated, and also asks for trustees' commissions on both corpus and income, and attorney's fees on the settling of the account which has heretofore been approved and settled.
In 1911 Katharine Flower Kip, a New Jersey resident, executed a trust indenture transferring $250,000 to trustees to hold the trust estate "during the lives of Ira A. Kip, Third and Nathalie Kip, and the survivor of them," and to pay the income to the donor for life, and upon her death to Ira A. Kip, Jr., her then husband, and upon the death of the donor and Ira A. Kip, Jr. to the surviving children of the donor, the issue of any deceased child to take the parent's share. Upon termination, the corpus was to be *374 distributed equally among the children of the donor surviving the donor, and to the lawful issue of a deceased child per stirpes. Ira A. Kip III and Nathalie Kip were the children of the donor. Nathalie Kip died in 1921 and there are surviving two children of the donor, Katharine Kip Brenneman and Ira A. Kip III. In 1918 the donor and Ira A. Kip, Jr. were divorced and the donor remarried.
In March 1920, Ira A. Kip, Jr., donor's former husband, and the donor, then Katharine F. Runyon, executed a written instrument referring to the trust indenture of 1911. By it, Ira A. Kip, Jr. assigned and transferred to their four children, share and share alike, or to the issue of any deceased child per stirpes, the income that might accrue and become payable to him under the trust fund created by the 1911 instrument.
On August 17, 1951 the donor died a resident of New Jersey, leaving her surviving Ira A. Kip III and Katharine Kip Brenneman, and also six grandchildren and three great-grandchildren. None of the children of the donor who predeceased her left issue surviving. The present trustees are Robert S. Kearney and Ira A. Kip III. (Said Ira A. Kip III is now known as Ira A. Kip II.)
In 1943 in the Supreme Court of the State of New York the accounts of the trustees from December 23, 1911 through September 30, 1941 were settled and approved. The affidavit of Robert S. Kearney filed in this cause indicates that he and Ira A. Kip III then received as corpus commissions $2,077.48. The trustees have also paid themselves $1,989.24 as an advance on commissions that they expect to get on the present proceeding. The account of the present trustees to August 17, 1951 shows a balance of corpus amounting to $134,215.14 and the request is for commissions at 5% on the first $50,000 and 3% on the balance, amounting, in all, to $5,026.45. The trustees credit against this last amount $2,077.48 received under the judgment of the New York court and $1,989.24 advanced to them, so that the amount that they now request is $959.73. They also seek *375 commissions on $108,102.75 of income, amounting to $5,405.14, $5,108.91 of which they have already received, leaving a balance due the trustees, if allowed, of $296.23 commissions on income.
The brief filed in this cause by counsel for the trustees states the questions as follows:
"(a) Under a proper construction of Article First of the 1911 deed of trust and of the instrument of assignment dated March 9, 1920, and by reason of the death of the donor of the trust, have the life interests of Ira A. Kip II and of Katharine Kip Brenneman merged with the remainder interests of said individuals in their capacity as remaindermen under said deed of trust?
(b) Under a proper construction and application of the instrument of assignment dated March 9, 1920, was the entire interest which Ira A. Kip, Jr. (the divorced husband of the donor) had received under the 1911 deed of trust, transferred and assigned by said instrument of assignment to Katharine Kip Brenneman and Ira A. Kip II, being the only children of his marriage with the donor who ultimately survived the donor?
(c) Are the trustees authorized under a proper construction of Article First of the 1911 deed of trust and under the pertinent New Jersey laws and the general equity powers of this Court, to continue to hold, as part of the trust assets under said 1911 deed of trust, the fee title to certain improved real estate in New York City, at least until the present real estate conditions undergo a substantial change?"
Whether or not the life interests of Ira A. Kip II and Katharine Kip Brenneman have merged with the remainder interests of the said beneficiaries must be sought in the instrument or instruments creating the trust. The guiding principle is the intention of the donor. The trust indenture directs the trustees "to take and receive the said trust estate and hold the same during the lives of Ira A. Kip, Third and Nathalie Kip, and the survivor of them." Reference in the brief of the trustees is made to the instrument executed by the donor and Ira A. Kip, Jr. in 1920, but the court finds in the assignment no language which throws light on the donor's intent in 1911. The express direction is to hold the trust estate "during the lives of Ira A. Kip, Third and Nathalie Kip, and the survivor of them." *376 The court must find the intention of the donor in the language which she used, and that language is capable of no construction other than that the trust was to continue during the lives of Ira A. Kip, Third and Nathalie Kip, and the survivor. The trust will, therefore, continue during the lifetime of Ira A. Kip, Third. The rule finds expression in 2 Restatement of the Law of Trusts, sec. 337 (g), reading as follows:
"g. Trust for successive beneficiaries  purposes not accomplished. If a trust is created for successive beneficiaries and it is not the only purpose of the trust to give the beneficial interest in the trust property to one beneficiary for a designated period and to preserve the principal for the other beneficiary, but there are other purposes of the trust which have not been fully accomplished, the trust will not be terminated merely because both of the beneficiaries desire to terminate it, or one of them acquires the interest of the other.
Thus, if one of the purposes of the trust is to deprive the beneficiary entitled to income of the management of the trust property for the period during which he is entitled to the income, the trust will not be terminated during the period, although both of the beneficiaries are of full capacity and desire to terminate it."
The next question is whether or not the 1920 assignment effectually and validly transferred and assigned all of the interest in the trust to Katharine Kip Brenneman and Ira A. Kip II. Swetland v. Swetland, 105 N.J. Eq. 608 (Ch. 1930), affirmed 107 N.J. Eq. 504 (E. & A. 1931) holds that the situs of inter vivos trusts of personalty is to be determined by the law of the domicile of the donor at the date of execution of the trust instrument. In 1911 the donor was a resident of the State of New Jersey and therefore the trust is governed by the New Jersey law. Cf. David v. Atlantic County S.P.C.A., 129 N.J. Eq. 501 (Ch. 1941). The 1920 assignment effectually passed to Katharine Kip Brenneman and Ira A. Kip II all of the interest therein.
The 1911 trust indenture empowered the trustees "to invest and reinvest the said trust estate on bond and mortgage a first lien on real estate in the City of New York and in such other investments as are recognized by law as proper *377 for trustees * * *." In 1938 the predecessor trustees purchased a first mortgage on improved real estate at 305 East 69th Street, New York City. They paid $16,000 for it, and in the following year foreclosed the mortgage and took title thereto. No question exists as to the right of the trustees to protect the investment by buying in the property. Thereafter, the trustees put $10,607.55 into improvements and then an additional sum of $1,200. As of the closing date of the present account, August 17, 1951, the property is carried at a value of $27,807.55. The average net annual income during the past nine years is $1,860, a 6% plus return on the investment. The life tenants desire the investment retained and counsel for Ira Andrus Kip III, a remainderman, expresses no opinion. There is before the court an affidavit of an experienced dealer in comparable real estate who places a value of $24,000 to $28,000 on the property. He also points out that the trustees will be confronted with the necessity for further capital investment of $2,000 within three years to keep the property in good condition. Pending modification or abandonment of rental control, there is no prospect of increasing the net income and, in view of rising labor costs and taxes, there is a probability of a considerable reduction in the net income. The right of the trustees to hold the property beyond a reasonable length of time in which to find a purchaser at a reasonable price is questionable. The best interests of the trust require that the trustees make reasonable and prompt efforts to dispose of the property. The question of whether or not the trustees have made themselves liable by reason of retention of this property is presently academic. It may well be that upon a sale for cash, or cash and mortgage, the property will realize a sum equal to that at which it is presently carried in the account. Furthermore, the trustees, in event that the sale results in a loss, may seek relief under N.J.S. 3A:15-1(v) at which time the splendid income-producing record is a factor to which the court should, and undoubtedly will, attach considerable weight.
*378 It would seem that the trustees under the provisions of N.J.S. 3A:10-2 would be entitled to corpus commissions not exceeding one-fifth of 1% per annum from the date of the accounting in the New York Court. However, no corpus commissions will presently be allowed but that question will be held pending the sale of the New York real estate.
Commissions on income will be allowed as requested. As to counsel fee, there will be an award of $3,000 to counsel for the trustees and to counsel of Ira Andrus Kip III of $300.
Judgment in accordance herewith.